UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20CR196 SRC |
| | ) | |
| ALI WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Ali Wilson, represented by defense counsel Jeff Goldfarb,

and the United States of America (hereinafter "United States" or "Government"), represented by

the Office of the United States Attorney for the Eastern District of Missouri. This agreement

does not, and is not intended to, bind any governmental office or agency other than the United

States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by

this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to Count One of the charge, the government agrees to move

for the dismissal as to the defendant of Count Two at the time of sentencing. Moreover, the

United States agrees that no further federal prosecution will be brought in this District relative to

the defendant's distribution of cocaine from December 2018 until the date of the Indictment (March 18, 2020), of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count One, to forfeit to the United States his interest, if any, in certain property set forth in the Forfeiture Allegation in the Indictment and Bill of Particulars filed in this case, specifically: 3315 Kingsley Drive, Florissant, Missouri 63033; a 2019 GMC Sierra Denali 3500; a 2018 Lincoln MKZ; a 2006 Jeep Grand Cherokee; a 2012 BMW 750; approximately $2,150; and a Ruger P95DC 9mm handgun. The United States agrees to release its *lis pendens* and forego forfeiture related to: real property located at 300 Banff Circle, St. Louis, Missouri 63137; real property located at 10622 Foxpath Drive, St. Louis, Missouri 63137; real property located at 1136 Hornsby Avenue, St. Louis, Missouri 63147; real property located at 5523 Hebert Street, St. Louis, Missouri 63120; real property located at 5800 Vivian Avenue, St. Louis, Missouri 63147; real property located at 8524 Drury Lane, St. Louis, Missouri 63147; real property located at 71 Charbonier Bluffs Drive, Florissant, Missouri 63031.

## 3. ELEMENTS:

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Section 846, and admits there is a factual basis for the plea, and further fully understands that the elements of the crime are: (1) beginning at a time unknown, but including December 2018 to the date of the Indictment (March 18, 2020), the defendant entered into an agreement or understanding to distribute cocaine, a Schedule II controlled substance; (2) the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; (3) at the time the defendant joined in the agreement or understanding, he knew of the purpose of the agreement or understanding; 4) the amount of cocaine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of others reasonably foreseeable to him is five (5) kilograms or more.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in December 2018 and continuing thereafter to the date of the indictment (March 18, 2020), defendant Ali Wilson conspired to possess with the intent to distribute and to distribute cocaine and other controlled substances. Wilson, knowing the purpose of the agreement and conspiracy, knowingly joined it while it was in effect. Wilson engaged in these activities in the St. Louis metropolitan area, within the Eastern District of Missouri, as well as elsewhere throughout the United States.

3

In December 2018, investigators began an investigation into Ali Wilson and a drug trafficking organization ("DTO") of which he was a member. The DTO imported cocaine and other controlled substances into the St. Louis area and distributed them.

In late April 2019, investigators in Texas interdicted a courier carrying multi-kilogram quantities of heroin and methamphetamine destined for the St. Louis area. The courier stated that in late March/early April 2019, he had delivered a shipment of drugs to St. Louis. The courier identified photographs of Wilson and another person as the recipients of that prior shipment of drugs.

In July 2019, investigators learned an individual (identified herein as "Person #1") that worked for the DTO's source of supply was coming to St. Louis to meet an incoming load of cocaine and ensure its delivery to the DTO. Person #1 previously made several such trips to St. Louis.

Investigators thereafter observed Person #1 and another male (identified herein as "Person #2") unload the cocaine from a tractor trailer. Later that day, Person #2 took the cocaine to a local hotel room where Wilson soon arrived driving a vehicle with a male passenger. The male passenger entered Person #2's hotel room with gym bags containing cash to pay for the cocaine. After the exchange, the male passenger returned to Wilson's vehicle with the cocaine. Investigators arranged for a traffic stop of the vehicle after it departed the hotel. During the stop, the police officer asked Wilson and the passenger to exit the vehicle. Upon that request, Wilson refused and immediately fled the traffic stop traveling at a high rate of speed.

Meanwhile, investigators maintained surveillance of Person #2. Person #2 ultimately shipped Wilson's cash payment for the cocaine to El Paso via four packages sent through Federal

4

Express. Investigators interdicted the packages and seized a total of $553,670.00 in drug proceeds hidden inside.

In September 2019, investigators utilized a DEA confidential source to introduce a money counter equipped with a GPS to other members of the DTO. During the meeting, one of Wilson's associates inquired about purchasing cocaine from the confidential source. The confidential source informed the associate that he/she could provide two or three kilograms of cocaine. The associate replied to the confidential source that anything less than 20 kilograms was a waste of time.

In January 2020, investigators identified the residence of co-defendant Marvell Reynolds' located at 3315 Kingsley Drive, Florissant, Missouri 63033, as a "stash" location utilized by Wilson and the DTO. Investigators noticed a Jeep Cherokee appeared in the driveway of the residence approximately once or twice a month. Police databases indicated the Jeep Cherokee traveled from Texas each month.

Investigators conducted a series of trash pulls from 3315 Kingsley Drive in February and March 2020. During the trash pulls, investigators located multiple items associated with drug trafficking, to include: several receipts with large cash purchases, plastic baggies that had the corners removed, multiple shipping labels from the United States Postal Service, and multiple gallon sized vacuum sealed bags that appeared to have the shape of a brick indented within.

On March 14, 2020, investigators again observed the Jeep Cherokee at 3315 Kingsley Drive. On March 15, 2020, investigators observed Reynolds leave his residence empty-handed on multiple occasions and return with one or more bags a short time later. Later that day, Wilson arrived at 3315 Kingsley driving a black Lincoln MKZ and entered the residence empty-handed.

A short time later, Wilson left the residence carrying two black colored duffle bags accompanied by Reynolds and headed toward his vehicle to depart the residence.

As Wilson and Reynolds reached the vehicle, investigators approached and arrested them. After obtaining several federal search warrants, investigators discovered the two black duffle bags contained approximately 28 kilograms of cocaine in individually wrapped bricks. Inside 3315 Kingsley Drive, investigators found Reynolds' Ruger P95DC, 9mm firearm, fully loaded with one cartridge in the chamber, a digital scale containing a white powdery residue, a vacuum sealing machine, numerous vacuum seal bags, the money counter previously introduced to the organization by the DEA, nine cell phones, approximately one ounce of marijuana, and approximately 10 grams of cocaine. The Jeep Cherokee was found to contain an after-market "trap" or hidden compartment commonly used to transport drugs and U.S. currency. The infotainment system of the Lincoln MKZ indicated the vehicle had previously visited 3315 Kingsley. Finally, the data from the money counter revealed that, after it was sold to the DTO in September 2019, it went to 3315 Kingsley were it remained until discovered during execution of the search warrant at the residence. The data further revealed the money counter was typically utilized monthly and counted a total of approximately $664,000 in drug proceeds.

Based upon the evidence and the parties' approximation of the value of the controlled substances which are the subject of the conspiracy, the parties agree that the amount of controlled substances involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is between 15 and 50 kilograms of cocaine.

6

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the offense in Count One to which the defendant is pleading guilty is imprisonment of no less than ten years and no more than life, a fine of not more than $10,000,000, or both such imprisonment and fine. The Court must also impose a period of supervised release of not less than five years.

**The defendant fully understands Count One to which defendant is pleading guilty carries a mandatory minimum sentence of ten (10) years.**

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 32, as found in Section 2D1.1 because the quantity of cocaine for which the defendant is accountable, including relevant conduct, is more than 15 kilograms but less than 50 kilograms.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: none

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly

7

demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: none.

**c. Other Adjustment(s)/Disputed Adjustments:** The parties disagree as to whether the defendant recklessly created a substantial risk of death or serious bodily injury to another person during the traffic stop described in the Facts section of this Agreement pursuant to Section 3C1.2. Both parties reserve the right to litigate this issue at sentencing. If the Court finds that 3C1.2 applies, then two levels should be added.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29. If Section 3C1.2 applies and two levels are added, the parties estimate that the Total Offense Level is 31.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of

10

the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: 3315 Kingsley Drive, Florissant, Missouri 63033; a

2019 GMC Sierra Denali 3500; a 2018 Lincoln MKZ; a 2006 Jeep Grand Cherokee; a 2012 BMW 750; approximately $2,150; and a Ruger P95DC 9mm handgun. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a

12

reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

14

where the Court rejects those portions of the plea agreement which deal with charges the

government agrees to dismiss or not to bring.

5/6/21
Date

for Stephen Casey
Assistant United States Attorney

5/6/21
Date

Ali Wilson
Defendant

5/6/21
Date

Jeff Goldfarb
Attorney for Defendant

15